IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


BRUCE WAYNE KOENIG, #288937     *
        Plaintiff,
     v.     *     Civil Action No.  JKB-16-1289

DEPARTMENT OF PUBLIC     *
  SAFETY AND CORRECTIONAL
  SERVICES, et al.     *
        Defendants.
               **\*\*\***

<u>MEMORANDUM</u>

**<u>Procedural History</u>**

This verified civil rights complaint for damages and "preventive" relief,[1] dated August 21, 2015, was originally received in the United States District Court for the District of Columbia on November 2, 2015, and transferred to this District on May 2, 2016.[2]   Bruce Koenig, who is confined at the Maryland Correctional Institution in Jessup (MCIJ), alleges that he is a 66-year old inmate who has been confined on the D-West tier, cell 128, at MCIJ since December 3, 2014, when he was transferred there to be housed on the "deaf and hard-of-hearing tier."   He

---

[1]      It is believed that Koenig seeks "physician ordered accommodations."

[2]      Bruce Koenig originally filed this action regarding his Maryland confinement against Maryland defendants in the District of Columbia seemingly because he alleged he was "domiciled" in the District of Columbia.  Although he refers to "diversity filing" (ECF No. 1, pp. 10-11), Koenig's civil cover sheet, cites to a civil rights nature of suit.  ECF No. 1-1.  Judge Amy Berman Jackson ordered the case transferred to this court on March 30, 2016, due to  improper venue.  ECF No. 6.  It was transferred and received for filing on May 2, 2016.

claims that he is a qualified individual with a disability under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973 ("RHA"), § 504 as amended, 29 U.S.C. § 794. Koenig alleges that his status as a disabled person has been confirmed by the Justice Department and Social Security Administration.[3] ECF No. 1, p. 5.

In his original complaint, which Koenig later asked the court to disregard (ECF No. 17-1), he raised the following issues:

- The Department of Public Safety and Correctional Services (DPSCS) has, since 1999, entered into contractual agreements with medical services companies to provide care for inmates and has "omitted responsibility" for providing medical mattresses, cotton blankets, additional pillows or orthopedic pillows, customized or "upgrade" footwear, and medical specialties for allergies, dermatology, and other areas, all as a cost-cutting measure.

- His torn left shoulder rotator cuff, inability to hear, knee, back and neck injuries, Meniere's Disease, Neuropathy, chronic depression and bipolar

---

[3]     Koenig filed two similar complaints on April 5, 2012, and October 16, 2013, while confined at the North Branch Correctional Institution (NBCI). *See Koenig v. Maryland, et al.*, Civil Action No. JFM-12-1087 (D. Md.) and *Koenig v. Maryland, et al.*, Civil Action No. JFM-13-3082 (D. Md.). Summary judgment was granted in favor of defendants in those cases. Both decisions were affirmed on appeal. To the extent that Koenig now seeks to revisit the issues raised in those complaints as to his confinement at NBCI, he is estopped and barred from doing so. Where there has been a final judgment on the merits in a prior suit; an identity of the cause of action in both the earlier and the later suit; and an identity of parties or their privies in the two suits, *res judicata* is established. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 248 (4th Cir. 2005). The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991). In addition, "'[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.*, quoting *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F.2d 355, 359 (4th Cir. 1989).

affect, and bronchial asthma, which affect his day-to-day mobility, communications, and ability to defend himself and to participate in work or light recreational activities, implicate ADA and RHA protections.

- Former MCIJ Warden and Regional Director Dayena Corcoran has dictated that MCIJ cells will not be converted to handicapped accessible cells, showers will not be equipped with safety rails, safety treads will not be provided in slippery and wet areas, and other needed conversions such as improvements to ventilation, will not occur.

- As a direct result of Corcoran's policies, Koenig has not been able to obtain a medical mattress, a second cotton blanket and pillow, upgraded walking or tennis shoes, two fans for his asthma, or a single-cell for self-defense purposes.

ECF No. 1, pp. 6-12.

Koenig has filed "first" and "corrected" amended complaints against State agencies, individual correctional administrators and staff, and State contractors invoking the court's jurisdiction under the ADA, RHA, 42 U.S.C. § 1983, and "other" claims under the court's pendent jurisdiction. He maintain that he suffers from deafness, Meniere's Disease, poor vision, dyslexia, torn meniscuses in each knee, severe mechanical pain and loss of sensation in both feet, and Ankylosing Spondylosis[4] (AS) of his spine. Koenig alleges that defendants continue to discriminate against him and others by (1) denying effective means of

---

[4]     Ankylosing Spondylosis is a broader term referring to degenerative age-related conditions affecting the spine such as osteoarthritis or degenerative disc disease. It is often caused by general wear and tear of the spine, such as vertebrae compressing over time and deteriorating the discs found between the vertebrae. Spondylosis can lead to compression of nerves in the spinal column, causing severe and chronic pain in the back and extremities. *See* https://www.laserspineinstitute.com/back_problems/spondylitis/cervical.

communicating by telephone;[5] (2) providing inadequate access to auxiliary aids and services necessary to accommodate disabled individuals in connection with hygiene (showers), educational and rehabilitative programming, and employment (vocational and rehabilitative work training and educational programs); (3) not furnishing adequate notification of important events and safety announcements and interpretative services at disciplinary hearings or other proceedings; and (4) not providing Koenig with progressive lens eyewear with "several middle distance lens capacity." ECF Nos. 16-18 & 28. He seeks declaratory and injunctive relief, as well as damages. *Id.*

Koenig filed several other motions to amend or to supplement his complaint, which were granted by the court. ECF No. 29, 32 & 39. Additionally, he claims that he initially prepared his complaint as a supplement to *Jarboe, et al. v. DPSCS, et al.*, Civil Action No. ELH-12-572 (D. Md.).[6] He contends that his appeal of Judge Ellen Hollander's denial of his motion to reopen was pending before the

---

[5]     Koenig seeks interpretative services, TDD (telecommunications device for the deaf) equipment, videophones, instructional programs, and ASL (America Sign Language) services. ECF Nos. 16, 17 & 18.

[6]     A counseled class-action lawsuit was filed on behalf of deaf or hearing-impaired inmates in the custody of the Maryland DPSCS on February 23, 2012. The complaint was filed against Maryland correctional agencies, prisons, and administrators, invoking the ADA or 42 U.S.C. § 12131, the RHA or 28 U.S.C. § 794, *et seq.*, and federal laws under the United States Constitution accusing defendants of discriminatory practices against deaf or hearing-impaired inmates in regards to auxiliary aids, interpretive services, and announcements. *See Jarboe, et al. v. Maryland Department of Safety and Correctional Services, et al.*, Civil Action No. ELH-12-572 (D. Md.). Subsequent to motions practice and a number of settlement conferences, on February 20, 2015, a Settlement Order was entered as to all counterclaims, cross-claims, and third-party claims. The *Jarboe* case was dismissed.

United States Court of Appeals for the Fourth Circuit. He asks that if the Fourth Circuit denies his motion, the court consider his most recently filed amended complaint as the only complaint for consideration. On July 24, 2017, the Fourth Circuit denied Koenig's appeal. *See In re Koenig*, CA No. 17-1131 (4th Cir. 2017).

## Pending Motions

Koenig has filed a motion for order of service, claiming that service of process has not been accepted on defendants Flood, Dill, Shepard, Hopkins, Lottich, Ross, Rhonda Jones, Prison Operations Systems, Inc., and Unknown Employees, Prison Operations Systems, Inc.[7] ECF No. 49. In addition, he has filed a motion to supplement pleading, which, when generously construed, seeks to add verbiage to his amended complaint and to add as a defendant Steven Shilo, the Chief Executive Officer (CEO) for Maryland Correctional Enterprises (MCE). ECF No. 54. For reasons to follow, the motions shall be denied.

The served defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 36. After receiving several extensions, Koenig has filed opposition responses[8] (ECF Nos. 59 & 62) and a cross–motion for

---

[7] These names are taken from Koenig's amended complaint received for filing on February 13, 2017. ECF No. 28. Defendants who were previously named, but are not listed in that amended complaint, such as Paulette Francois and Stephen Shiloh, shall be dismissed.

[8] Koenig has also filed pleadings docketed as "supplemental or amended complaints" and a motion for extension of time, which is comprised of various exhibits. ECF

summary judgment. ECF No. 59. The case is ready for consideration and defendants' dispositive motion may be determined without oral hearing. *See* Local Rule 105.6. (D. Md. 2016).

## Standard for Summary Judgment

Because matters outside the pleadings will be considered, defendants' motion shall be treated as a motion for summary judgment. Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"

---

Nos. 63, 65-70 & 72. Upon review of the documents, the Court finds that they contain records and declarations in support of Koenig's opposition. They are therefore construed as supplemental opposition responses.

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson,* 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Discussion

According to defendants' extensive responsive pleading, Koenig is a 67-year old male whose first-degree murder sentence without parole renders him ineligible for diminution credits. They allege that from February of 2000 to January of 2008, he was primarily housed in the Jessup, Maryland, prison region. He was then housed at NBCI from February 27, 2008, to October 29, 2013, when he was transferred to the Western Correctional Institution (WCI), and remained at WCI until December 3, 2014, when he was transferred to MCIJ. ECF Nos. 36-4 & 36-5.[9]

Defendants maintain that case management policy is governed by Division of Correction Directives, which set out the eligibility criteria for assignment to a

---

[9] All citations refer to the electronic pagination found on the docket.

program.  Correctional Case Management Specialist ("CCMS") Tennille Winters affirms that for an inmate to be eligible for placement in the MCE shop, the inmate must be housed at WCI for a minimum of two years.  ECF No. 36-13, Winters Decl.  Defendants state that under applicable correctional regulations, an inmate with at least one documented disability shall be afforded job and program opportunities that are appropriate, considering their limitations.  ECF No. 36-36 & ECF No. 36-16.  Winters maintains that because Koenig met that requirement he was not placed on the waiting list for the MCE shop; instead, he obtained a sanitation job on June 26, 2014, while housed at WCI, and held that job until his transfer from WCI to MCIJ on December 3, 2014.  ECF No. 36-17.

Correctional Case Management Supervisor Nichole Daugherty contends that she reviews all inmate transfers coming in and out of MCIJ.  She maintains that MCIJ is the designated facility for all deaf and hard-of-hearing inmates.  She states that Koenig has an alert that he is hearing-impaired, and she infers that he was transferred to MCIJ because of his medical disability.  ECF No. 36-22, Daugherty Decl.

Defendants state that in the Fall of 2015, Koenig completed at least three (3) courses in Adult Education through the Anne Arundel Community College and was awarded 8.30 continuing education units in Desktop Publishing classes on November 17, 2015.  ECF No. 36-24.

Defendants make much of the fact that Koenig filed over 100 administrative remedy procedure ("ARP") requests, a number of which concern the claims raised herein. They observe that in 2011 and 2012, he grieved he was unable to receive a cotton blanket prescribed by medical staff and had instead received a wool or acrylic blanket. ECF No. 36-8. Koenig further sought ARP relief in 2011 alleging that he had been denied two medically prescribed chairs for his cell. ECF No. 36-9. In August of 2012, Koenig complained that he had not been provided with "Real Time Transcription" for a disciplinary hearing. ECF No. 36-10. In April of 2013, he filed an ARP in which he complained he was on "no work status" although he was cleared by the medical department to work on the housing unit sanitation crew. ECF No. 36-11. Koenig also grieved that when called to report to work, he was unable to perform the job without experiencing pain. ECF No. 36-12.

According to defendants, after Koenig's transfer to WCI on January 15, 2014, he only filed one ARP while confined at that facility. The ARP, filed on July 23, 2014, pertained to a complaint that he was receiving egg, peanuts, and soy-based products and grapefruit to which he was allergic or was contraindicated due to his medication. The ARP did not allege violations under the ADA. ECF No. 36-10, Menger Decl., ECF No. 36-19 & ECF No. 36-20.

Defendants state that after Koenig's December 2014 transfer to MCIJ he filed six ARPs in 2015, one of which is relevant to this case. ECF No. 36-25, ECF No. 36-26. Koenig filed 14 ARPs in 2016, eight of which relate to claims raised herein. ECF No. 36-25, ECF No. 36-28, ECF No. 36-29, ECF No. 36-30, ECF No. 36-31, ECF No. 36-32, ECF No. 36-34 & ECF No. 36-35.

According to Acting Deputy Director for Field Support Services/Litigation Coordinator Kristina Donnelly, the DPSCS has designated an ADA Coordinator. Additionally, Operations (OPS) and Division of Corrections regulations have been established to ensure non-discrimination without regard to disability and to apply appropriate provisions of the ADA. ECF No. 36-36. Donnelly further affirms:

- Maintenance of all auxiliary aids and services, to include hearing aids, is the responsibility of the DPSCS and is being fulfilled.

- MCIJ uses pagers and an electronic message board to notify deaf and hard-of-hearing inmates of institutional announcements.

- The DPSCS assures that communication technology used by deaf or hard-of-hearing inmates are maintained in good working order.

- Deaf and hard-of-hearing inmates housed at MCIJ are housed in a separate unit and are celled with a hearing inmate.

ECF No. 36-36.

Defendants acknowledge that Koenig suffers from chronic medical problems, such as hyperlipidemia, dermatitis, asthma, hypertension, and Meniere's Disease. They note that the WCI disability assessment indicated that Koenig uses

11

a cane, wore eyeglasses, and was identified as hearing-impaired, but did not wear a hearing aid. Defendants also maintain that between January of 2014 and December of 2016, Koenig filed approximately 76 sick-call slips and related correspondence. ECF No. 36-39, pp. 316-17 & 319-20 (Filed Separately Exhibits). The complaints were multi-faceted, including requests for medication refills, teeth cleaning, certain soaps, shampoos, lotions, walking/tennis shoes, a second chair in his cell, "medical mattress," a cotton blanket, bottom tier status, a second fan, problems with eyeglasses, allergic reactions to a wool blanket, and complaints of pain in the neck, back, left hip, knees, and feet. *Id*., pp. 6-85.

Koenig's records have extensive medical Chronic Care Clinic (CCC) visit notations and progress notes taken from January 2014 to December of 2016. Koenig was seen in the (CCC) on a regular basis, primarily for his AS, asthma, Meniere's Disease, allergies, and hypertension. *Id*., pp. 87-320.

Koenig was seen in the medical department at WCI on December 2, 2014, for his hearing loss and it was determined that because of the severity of his bilateral sensorineural hearing loss, he would not benefit from hearing aids. Reflective surfaces, a flashing light, or a mirror were recommended as possible solutions to notify Koenig of someone approaching. *Id*., pp. 249-250.

On December 3, 2014, following Koenig's transfer to MCIJ, another disability assessment was conducted noting multiple allergies, including latex and

wool, moderate hearing loss with no hearing aids, Meniere's Disease and Degenerative Joint Disease (DJD) of the spine and knee.  ECF No. 36-40.  A medical alert for asthma was completed that same day.  ECF No. 36-39, p. 248 (Filed Separately Exhibits).  On January 15, 2015, a medical alert was written for Koenig to receive a cane and bottom bunk for one year.  *Id*., p. 243.  On January 16, 2015, a request was made for Koenig to be provided with "wool free" housing.  *Id*., p. 195.  A request for a kosher diet with no eggs or peanuts was made on September 8, 2015.  *Id*. at p. 210.  On November 25, 2015, a request was made to provide Koenig with a cotton blanket and a referral form was issued for a kosher diet with a no-peanuts, eggs, or soy products request.  *Id*., pp. 202-03.  Koenig signed off the peanut and egg allergy diet on July 25, 2014.  *Id*., pp. 217-18.

During a CCC visit on February 24, 2015, it was observed that Koenig walks with a limp and uses a cane, and he can read lips and only hears when a person speaks loudly.  *Id*. pp. 240-242.  A medical assignment form was issued to provide Koenig a second mattress and pillow, allow him a cane and elevator use, provide him a bottom bunk, and allow his access to a handicapped shower at MCIJ.  ECF No. 36-39, p. 239 (Filed Separately Exhibits).

Custom shoe inserts were requested on June 18, 2015, and on July 9, 2015, a request was made to allow Koenig to have two fans, a wedge pillow, and two blankets in his cell, and to allow him to keep his fan and foot soak basin.  *Id*., pp.

224-225 & 219-220.  Koenig received a 10" wedge pillow on February 12, 2016. *Id*., p. 163.  Koenig received two pairs of eyeglasses on July 2, 2016.  *Id*., p. 122.

 Defendants argue that Koenig's most recent progress notes in 2017, taken around the time the dispositive motion was filed, establish that his medical issues are being addressed.  *Id*., pp. 87-90.

In his responsive pleadings and cross-motion for summary judgment, Koenig argues that he completed all remedies available to him and his complaint is not time-barred.  He asserts that defendants are on notice of his disabilities and have failed to specifically address denials of programs, activities, services, and benefits, as defined by the ADA and RHA, within the body of their response.  He asserts he is entitled to summary judgment.[10]  ECF Nos. 59 & 69.

Koenig claims that he is an elderly, deaf litigant with several severe and degenerative disabilities and has been denied ADA accommodations previously ordered over the past "two hundred and seventeen months."  ECF No. 63.   He attaches numerous exhibits, primarily related to his ARPs from 2000-2006 and correspondence from 2000 to 2017.  *Id.*

---

[10]     Koenig seeks a continuance for purposes of discovery, arguing that he must obtain discovery and affidavits from MCIJ medical services staff and its records and must depose medical personnel.  ECF No. 59.  Koenig seemingly raises this argument under Federal Rule of Civil Procedure 56(d).  However, Koenig has not explained why this discovery is relevant to his case or affects his ability to respond to defendants' summary judgment motion in light of their numerous exhibits, including the hundreds of pages taken from his medical record, as well as his own submission of records.   As such, his request will be denied.

The remaining court-construed oppositions contain medical records concerning Koenig's hearing loss, eyesight issues, allergies, and asthma, Koenig's daily log notations, copies of statutes and articles, declarations, the *Jarboe* complaint, an Administrative Hearing decision from 2004, and correspondence. ECF Nos. 65-68,70 & 72.

## Analysis

### Class Action Certification

The court first observes that Koenig has filed the complaint on behalf of himself and other similarly situated individuals, seeking class certification. Koenig cannot file a complaint on behalf of others. *Inmates v. Owens*, 561 F.2d 560, 563 (4th Cir. 1977). Among the requirements that litigants must meet in order to maintain an action as a class action is that the "representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The court concludes that Koenig, as a self-represented litigant, cannot represent others in a class action. *See Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975). Class action certification shall not be granted in this case.

### Sovereign Immunity

Koenig names the DPSCS, Division of Correction, the Jessup Correctional Institution, MCIJ, and MCE as defendants in his amended complaint. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C.

§ 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover, the State of Maryland is immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993) (stating that without waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Consequently, the complaint against DPSCS, Division of Correction, the Jessup Correctional Institution, MCIJ, and MCE is subject to dismissal.

*Harassment and Retaliation*

To the extent that Koenig alleges that he has been subject to verbal harassment, threats, and retaliation by correctional staff, he has failed to state a claim. Mere verbal abuse and taunting inmates by guards, including aggravating language, does not state a constitutional claim. *See McBride v. Deer,* 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (stating "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Henslee v. Lewis,* 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983.") (citing *Collins v. Cundy,* 603 F.2d 825, 82 (10th

Cir. 1979); *cf. Hudspeth v. Figgins,* 584 F.2d 1345 (4th Cir. 1978) (stating allegations that a guard threatened to have an inmate killed were sufficient to state a § 1983 claim). Consequently, Koenig's allegations that correctional staff verbally harassed him are not enough to state a § 1983 claim. Such a claim only accrues when the threats or threatening conduct result in a constitutional deprivation. *See Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983).

Further, bare or conclusional assertions of retaliation are insufficient to establish a retaliation claim. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. *See, e.g.*, *Cochran v. Morris,* 73 F.3d 1310, 1318 (4th Cir. 1996). Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran,* 73 F.3d at 1317; *Adams,* 40 F.3d at 74.

### Job & Rehabilitative Assignments, Classification and Transfers

Koenig alleges that he was denied prison jobs or other educational and rehabilitative assignments. Prisoners do not have a constitutionally protected right to work while detained or incarcerated or to receive educational or vocational programming. *Ward v. Moyer*, GJH-15-1104, 2016 WL 393861, n.8 (D. Md.

2016) (citing *Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F.2d 812, 815 (4th Cir. 1978)); *Blankumsee v. Galley*, PWG-15-837, 2016 WL 270073, at *7 (D. Md. 2016) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1994)); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985). Koenig's due process claim regarding his inability to obtain certain prison employment and rehabilitative opportunities is without merit.

Further, insofar as Koenig takes issue with his prison assignments and classification, he has failed to set out a colorable constitutional claim. An inmate has no constitutional right to be confined to a particular institution, *Meachum v. Fano*, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983).

*ADA and RHA Claims*

Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the services, programs, or activities of a public entity. Cases interpreting the language of the ADA and that of the RHA have concluded that the applicable legal tests created by these statutes are interchangeable. *See Calloway v. Boro of Glassboro Dep't of Pol.,* 89 F. Supp. 2d 543, 551 (D.N.J. 2000). To state a claim for violation of either the RHA or the ADA, the plaintiff

must show that he (1) has a disability, (2) is otherwise qualified to participate in a program, and (3) was denied the benefits of the program or discriminated against because of the disability. *See Millington v. Temple Univ. Sch. Of Dentistry*, 261 F. App'x 363, 365 (3rd Cir. 2008). A physical condition may qualify as a "disability" within the meaning of the ADA and RHA because it "substantially limits one or more ... major life activities." 42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B). Under the law in this circuit, to establish that he is disabled under the ADA, Koenig must prove that he has a physical or mental impairment; that this impairment implicates at least one major life activity; and the limitation is substantial. *See Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006).

The ADA defines "public entity" in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *See* 42 U.S.C. § 12131(1)(A)-(B). The term "public entity," "as it is defined within the statute, does not include individuals." *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n.8 (8th Cir.1999); *see also* 42 U.S.C. § 12131(1).

"In suits under Title II of the ADA ... the proper defendant usually is an organization rather than a natural person....Thus, as a rule, there is no personal liability under Title II." *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000); *accord Miller v. King*, 384 F.3d 1248, 1276-77 (11th Cir. 2004). Individual

liability is precluded under ADA Title II. In addition, the RHA provides disabled individuals redress for discrimination by a "public entity" that receives federal funds. Consequently, it would also appear that individual liability is not contemplated under § 504 of the RHA. *See Lollar v. Baker,* 196 F.3d 603, 609 (5th Cir. 1999); *Dunion v. Thomas,* 457 F. Supp. 2d 119 (D. Conn. 2006); *Calloway,* 89 F. Supp. 2d at 557.

There is no dispute that Koenig suffers from various maladies and conditions, chief among them, AS, Meniere's Disease, poor eyesight, and difficulty hearing. He has not demonstrated that he was treated differently from any other disabled person or hearing-impaired inmate. Moreover, the record shows that attempts were made to accommodate Koenig at each prison in which he was housed and that he was transferred to a facility better suited to his needs in 2014. He was placed on a sanitation work detail and attended adult education courses while housed at WCI. Further, the records show that Koenig was provided the adaptive equipment as requested by medical staff, including medical mattresses, pillow, a cane, glasses, and footwear. Not only has Koenig failed to establish that he is a qualified individual with a disability, but he has failed to prove violations of the ADA and RHA as the evidence here does not support a finding that he suffered wrongful discrimination due to his disability.[4]

*Conditions of Confinement*

A prisoner may set out a conditions-of-confinement claim by alleging that he was deprived of a basic human need that was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F.2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner. *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981). Allegations that prison conditions "involve the wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime," or are "without any penological purpose" fall squarely within the ambit of the Eighth Amendment. *Id*. at 347. The Eighth Amendment requires a court to examine whether prison conditions impose cruel and unusual punishment.

Koenig fails to present any medical evidence or declaration showing that he suffered a real and actual injury from the conditions of confinement to which he was exposed.[11]

## Conclusion

Summary judgment shall be granted in favor of defendants. The complaint against defendants Francois, Shiloh, Flood, Dill, Shepard, Hopkins, Lottich, Ross, Rhonda Jones, Prison Operations Systems, Inc., and Unknown Employees, Prison Operations Systems, Inc., is dismissed. A separate order effectuating the rulings made in this opinion is entered herewith.

Dated this  26th  day of March, 2018.

FOR THE COURT:

_____/s/_____

James K. Bredar
Chief Judge

---

[11]    Title 28, United States Code, § 1367(a) states, in part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction, also called pendent jurisdiction, only includes "other claims" related to "claims *in the action"* that convey original jurisdiction. Under supplemental jurisdiction, the federal claim acts as a jurisdictional "crutch." David D. Siegel, Commentary on 1990 Revision, appended to 28 U.S.C. § 1367 (West 1993).

Koenig's complaint presents no federal claims to which the state law claim could attach to convey supplemental or pendent jurisdiction. In the absence of an established federal law violation or a constitutional deprivation, the court declines to exercise its supplemental, pendent jurisdiction over any arguable tort claims.